Argued January 19, affirmed March 5, petition for rehearing
denied April 6, petition for review allowed May 25,
re-argued July 8, 1971

STATE OF OREGON, *Respondent, v.*
GARY LEROY DOUGLAS, *Appellant.*

481 P2d 653

*Gary D. Babcock*, Public Defender, Salem, argued the cause and filed the brief for appellant.

*Rhidian M. M. Morgan*, Staff Attorney, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

Defendant appeals from conviction of burglary. ORS 164.240. Two errors are assigned: (1) that a motion should have been allowed to suppress the seized contents of defendant's suitcase, and (2) the instruction allowing conviction on a 10 to 2 verdict was error.

It is necessary to relate complicated facts in order to explain our decision on the first assignment.

At 1:30 a.m., February 15, 1970, the city marshal of Hines, Oregon (population 1400), received from nearby tavern operators a report of the breaking and entering of a service station.

The witnesses described the suspect as a young man wearing white pants and a green coat. On investigation, the marshal found evidence that the station had been broken into and went looking for the man described. While searching back streets, he saw some youngsters running ahead of a man with white pants and a blue or green coat. The streets were wet and muddy. He lost the man in the darkness.

He returned to the service station and called the state police to assist. Officer Stephens of the state police arrived. They sat in Stephens' pickup across the street in the lot of another service station, and while there saw the defendant, dressed in dark clothing, come out of a motel room located on another corner of the intersection.

Defendant made a call from a phone booth, checked his watch several times, then came over to the officers and asked about bus schedules. Stephens replied he didn't know the bus schedule and asked defendant for his name. Defendant gave his name, volunteered that he had a brother-in-law, LeRoy Jones, who lived in the vicinity, and went back to the motel room.

Officer Stephens radioed the dispatcher in nearby Burns, Oregon, to check whether LeRoy Jones was a brother-in-law. The dispatcher checked by telephone with Jones' home and relayed back a negative answer. The officers were suspicious and knocked on defendant's door. Defendant admitted them, Stephens told him the results of his check and asked for more information.

While defendant was searching for identification, the marshal saw a coat "that looked like the coat I seen earlier" hanging in the open closet. He inspected it and found it was wet and muddy. Stephens asked defendant if he would let them look in a suitcase which was there. He refused. The officers told him several times during the next 20 minutes that if he didn't consent they would get a search warrant to check the suitcase. Defendant continued his refusal. He also denied having a pair of white pants.

The marshal testified that if defendant had

sought to leave at this time he thought he would have detained him, but Stephens, the state policeman, testified he would have let defendant go because he could not detain on suspicion.

LeRoy Jones arrived, and said something to the effect that there had been a mistake and defendant was his brother-in-law; that it had been some time since he had seen him. Defendant had arrived by bus that day, rented the motel room, but had not contacted his relatives. Jones, while talking alone with him, tried, at the officers' request, to get defendant to open the suitcase. Jones testified defendant told him he had a right to privacy in this respect, and would not open it. The defendant testified that Jones' urging was a material reason for his eventually opening it.

Jones went outside to join Stephens, who was using his car radio. The marshal came in and was alone with defendant. He testified:

"Q And will you tell the judge the circumstances, how the suitcase got opened?

"A Well, at first he wouldn't—went over to—the suitcase was sitting at the bottom of his clothes—and started fumbling, and he kept talking about his old brown suitcase, and he opened it part way and asked me if we was wanting it open.

"He wasn't going to open it. We went all through a conversation, and I finally told him we didn't care whether he opened it or not because we was going to get a search warrant and open it. Finally he fumbled and opened the bottom of that clothes—he just finally opened one end and dumped it out on the floor of the motel."

The suitcase contained green stamps worth $330, which later were proven to have been taken from the service station. Defendant put everything back in the

suitcase in the presence of Jones, while the marshal was outside telling Stephens that there were no white pants in the suitcase. A few minutes later, at Stephens' request, the defendant again dumped the contents out on the bed. This time only a few green stamps came out. Jones said defendant had put the rest of them in the bathroom washbowl, where they were found.

The owner of the service station arrived and it was discovered green stamps were gone from the station. The serial numbers of the missing rolls checked with those found in the suitcase. Defendant was arrested and advised of his rights. In a last-minute check of the closet, a pair of white pants was found hidden in a blanket on a shelf. The motion to suppress did not include the clothes. Defendant testified that before he opened the suitcase he was told someone was on the way with a search warrant. The officers and Jones testified to the contrary, but that defendant was told one would be obtained.

After hearing the evidence, *in camera*, the trial judge found:

"* * * [T]hat the defendant was not coerced or * * * placed under any duress * * * that the defendant was told * * * that if he didn't voluntarily divulge the contents of the suitcase, then they would attempt to get a * * * search warrant."

At the time the police officers sought entry to the suitcase, they knew a service station had been broken into. They had been told that a young man wearing a coat much like that which they could see, and by seeing could tell had recently been worn, had been inside the station. They did not know that any property had been taken. They did not take or open the suitcase. The defendant knew his right to prevent

search of the suitcase. This is obvious from his actions as well as what he told Jones. Then he opened the suitcase—not once, but twice.

We have critically examined the transcript, and we cannot say that the trial judge, who saw and heard all of the witnesses, was wrong in his findings of fact. "Determination of the legality of searches necessarily depends in each case upon its own particular facts." *State v. Brown,* 1 Or App 322, 461 P2d 836 (1969), Sup Ct *review denied* (1970). The question is close, but the facts we have related demonstrate that the trial judge drew reasonable inferences.

■ We have considered the case in the light of *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968); and *Frye v. Gladden,* 1 Or App 629, 465 P2d 716 (1970), as well as *State v. Williams,* 248 Or 85, 432 P2d 679 (1967). The entire circumstances shown in the record support a finding of voluntariness on the part of an informed defendant for the search of the suitcase. We think the search did not violate his constitutional rights against unreasonable searches and seizures, or to due process of law. Before coming to this conclusion we have reviewed and considered all of the cases cited by defendant.

■ The second assignment of error is determined by the decision in *State v. Gann,* 254 Or 549, 463 P2d 570 (1969).

Affirmed.